# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| MR. ANTHONY ROBERTSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:24-cv-03014-TLP-atc |
| v. ) | |
| ) | JURY DEMAND |
| SHELBY COUNTY, GAVIN SMITH, in his ) | |
| individual and official capacity, JOHN ) | |
| DOES (1–5), in their individual and official ) | |
| capacities, and ESTATE OF MICHAEL ) | |
| JOHNSON, by and through Kevin Childress, ) | |
| Administrator ad Litem. ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING DEFENDANT GAVIN SMITH'S MOTION TO DISMISS

Plaintiff Anthony Robertson sues Defendants Shelby County, Gavin Smith, John Does 1–5, and Estate of Michael Johnson[1] under 42 U.S.C. § 1983, the Tennessee Governmental Tort Liability Act, and Tennessee common law.  (ECF Nos. 1, 40.)  Defendant Gavin Smith now moves to dismiss.  (ECF No. 57.)  He argues that he is entitled to absolute prosecutorial immunity or qualified immunity.  (*Id.*)  Plaintiff responded.  (ECF No. 68.)  Smith replied.  (ECF No. 77.)  And for the reasons below, the Court **GRANTS** the Motion to Dismiss and **DISMISSES** Plaintiff's claims against Smith.

---

[1] Sadly, Michael Johnson passed away after Plaintiff sued here.  The Court substituted Estate of Michael Johnson in the deceased's place.  (ECF No. 49.)

1

## BACKGROUND

This case is about mistaken identification and wrongful detention. Plaintiff Anthony Sharron Robertson was held in custody for almost five months for crimes committed by a man named Anthony Terrell Roberson. (*See* ECF No. 40 at PageID 242.) After Plaintiff's release, he sued the people he claims are responsible for his incarceration. The facts below are taken from Plaintiff's Third Amended Complaint ("Complaint").

In late 2023 the Memphis Police Department ("MPD") matched Anthony Terrell Roberson to a series of robberies and sexual assault crimes. (ECF No. 40 at PageID 242–43.) About a week later, the Kansas City Police Department ("KCPD") informed the MPD that it had Roberson in their custody. (*Id.*) MPD officers then traveled to Kansas City and interviewed Roberson. (*Id.* at PageID 243.) The KCPD extradited Roberson to the Shelby County Sheriff Office's ("SCSO") custody at the end of the month. (*Id.*) Roberson has been in the SCSO's custody ever since. (*Id.* at PageID 242.)

MPD interviewed Roberson again on November 15, 2023. (*Id.* at PageID 243.) He admitted that he committed the robberies and the sexual assaults. (*Id.*) On August 29, 2024, Defendant Assistant District Attorney Gavin Smith "and/or other[s] . . . presented or approved charges and indictments" for these crimes. (*Id.*) A grand jury indicted Roberson that same day. (*Id.*) But the Shelby County Criminal Court Clerk's file mistakenly listed Plaintiff—Anthony *Shannon Robertson*—as the indicted defendant rather than using the correct name—Anthony *Terrell Roberson*. (*Id.* at PageID 244, 247.)

The SCSO contacted Plaintiff's family in early February 2024 looking for Plaintiff. (*Id.* at PageID 244.) Remember, the SCSO already had the correct person, Anthony Roberson in

custody at that point.  (*Id.*)  Meanwhile, Plaintiff contacted the SCSO shortly after they called for him, and an official told Plaintiff that he needed to speak with them about burglary charges.  (*Id.*)

In mid-February2024, the United States Marshals arrested Plaintiff at his home in Westerville, Ohio.  (*Id.* at PageID 245.)  Plaintiff was held at the Franklin County, Ohio, Corrections Center, for the next two weeks.  (*Id.*)  He asked officers to verify his warrant "to no avail."  (*Id.*)  The SCSO extradited Plaintiff from Ohio to the Shelby County, Tennessee jail ("201 Poplar") on March 2, 2024.  (*Id.* at PageID 245–46).  While in route, they told him that "there were possible irregularities related to his arrest."  (*Id.* at PageID 245.)

The state court assigned Michael Johnson as Plaintiff's public defender.  (*Id.* at PageID 241, 246.)  Plaintiff told Mr. Johnson that he had been falsely arrested and wrongfully detained for crimes he did not commit.  (*Id.* at PageID 246.)  He asked Mr. Johnson to verify his name, birthday, social security number, and other identifying information related to his charges.  (*Id.*)  The state court set Plaintiff's bond at $1,300,000.00.  (*Id.*)

Plaintiff later retained private counsel in July 2024.  (*Id.*)  His new counsel then contacted Smith and "promptly" secured Plaintiff's release through a "nolle prosequi with no costs."  (*Id.*)  After Plaintiff's release, Smith explained to a Shelby County Criminal Court Judge that Plaintiff's birthday was different from the true defendant's birthday, and that the true defendant, Anthony Roberson, was still in custody.  (*Id.* at PageID 247.)  Smith also explained that the indictment sheet accurately reflected Roberson's birthday but that the Criminal Court file had the wrong birthday for Roberson.  (*Id.*)  According to Smith, that name and birthday error led to Plaintiff's wrongful arrest.  (*Id.*)  All told, Plaintiff had been detained for 140 days.  (*Id.* at PageID 248.)

In December 2024, Plaintiff sued Shelby County and Michael Johnson.  (ECF No. 1.)  And in his Third Amended Complaint, he added Defendants Gavin Smith[2] and John Does 1–5.  (ECF No. 40.)  Plaintiff claims that Smith violated his Fourth Amendment right against unreasonable seizure by:

> supervising or directing the arrest and detention of Plaintiff based on known or reckless misidentification; his failure to verify or correct inaccurate information that led to Plaintiff's false arrest and unconstitutional detention; his deliberate indifference to systematic failures that led to the misidentification by failures to verify basic administrative information such as dates of birth, addresses, weight and height, and current whereabouts of the correct individual and to ensure all paperwork was accurate prior to approving and presenting indictments; and by his advice to law enforcement to proceed with charges or arrest without sufficient identity confirmation[.]

(ECF No. 40 at PageID 247–48.)  Smith now moves to dismiss, arguing that he is entitled to absolute prosecutorial immunity or qualified immunity.  (ECF No. 57.)

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient facts which "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  And in this posture, courts "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in [his] favor." *DirecTV, Inc. v.*

---

[2] Plaintiff sued Smith in his individual and official capacity.  (ECF No. 40.)  But when, as here (*see* ECF No. 44), "the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted).  So before moving on, the Court **DISMISSES** the official capacity claim against Smith.  *See, e.g., Spencer v. City of Hendersonville*, 487 F. Supp. 3d 661, 675 (M.D. Tenn. 2020), *aff'd*, No. 20-6168, 2021 WL 8016828 (6th Cir. Oct. 8, 2021) (explaining that official-capacity claims are redundant).

4

*Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  But the court need not accept a plaintiff's "legal conclusions or unwarranted factual inferences."  *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021) (quoting *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Arsan v. Keller*, 784 F. App'x 900, 909 (6th Cir. 2019) (quoting *Commercial Money Ctr. v. Ill. Union Ins.*, 508 F.3d 327, 336 (6th Cir. 2007)).

Smith attached Anthony Terrell Roberson's "indictment sheet" to his motion.  (ECF No. 57-1.)  This document is a form that is sent to the grand jury unit with handwritten information such as the defendant's name, date of birth, the criminal charges, and the bond amount.  (*Id.*)  According to Smith, he put the correct information about the defendant but the Shelby County Criminal Court Clerk's Office "inaccurately recorded" the information which led to the issuance of an arrest warrant for the wrong man.  (*Id.*)  Plaintiff argues that by including the "indictment sheet," Smith converted the motion to dismiss into one for summary judgment.  (ECF No. 68 at PageID 680–81.)  It does not.

Although courts generally look to only the face of the complaint when reviewing motions to dismiss, *see Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022), they "may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein."  *Bray v. Bon Secours Mercy Health,*

*Inc.*, 97 F.4th 403, 410 (6th Cir. 2024) (citing *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)). The Court considers Roberson's indictment sheet here because it is central to the Complaint.[3]

Plaintiff also argues that because Smith included Roberson's indictment sheet, he "open[ed] the door" to him responding with thirteen emails that he received during discovery. (*Id.* at PageID 681.) But again, Plaintiff is mistaken. Those emails are not public records, nor did Plaintiff refer to them in his Complaint. Because of that, the court will not consider those emails here. *See Caraway v. CoreCivic of Tennessee, LLC*, 98 F.4th 679, 688 (6th Cir. 2024); Fed. R. Civ. P. 12(d) (stating that a Rule 12(b)(6) motion is converted to one under Rule 56 when "matters outside the pleadings are presented to and *not* excluded by the court" (emphasis added)). The Court now considers the arguments presented in Smith's motion to dismiss.

## ANALYSIS

Plaintiffs may sue under § 1983 for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" against any person acting under color of state law. 42 U.S.C. § 1983. Plaintiff sues Smith here for allegedly violating his Fourth Amendment right against unreasonable seizure. (*See* ECF No. 40 at PageID 247–48.) Smith argues that the Court should dismiss this claim for three reasons. First, he contends that he is entitled to absolute prosecutorial immunity (ECF No. 57), and if not that, then qualified immunity. (*Id.*) He also argues that Plaintiff fails to state a claim for supervisory liability. (*Id.*)

### I.     Prosecutorial Immunity

When a plaintiff sues a government official under § 1983, "[a]bsolute immunity is the exception to the general presumption that qualified immunity 'is sufficient to protect government

---

[3] Plaintiff's claim against Smith refers to the indictment several times. (*See* ECF No. 40 at PageID 243, 244, 247, 248.)

officials in the exercise of their duties.'" *Jackson v. City of Cleveland*, 64 F.4th 736, 743 (6th Cir. 2023) (citing *Burns v. Reed*, 500 U.S. 478, 486–87 (1991)). It is Smith's burden to justify that prosecutorial immunity applies to his actions here. *See id.*

Absolute prosecutorial immunity "is a narrow, but powerful, protection given to prosecutors when they act as advocates participating in or preparing for a judicial proceeding." *Smith v. Wayne Cnty., Michigan*, 147 F.4th 613, 619 (6th Cir. 2025). It is powerful in that it can protect a prosecutor's illegal and improper conduct—even when that conduct genuinely wrongs a defendant. *Price v. Montgomery Cnty., Kentucky*, 72 F.4th 711, 719 (6th Cir. 2023) (citation omitted). This protection serves the public interest by not "gumming up the wheels of justice" with "retaliatory lawsuits against prosecutors."[4] *Id.* In *Imbler v. Pachtman*, the Court explained that the protection of absolute immunity addressed the "concern that harassment by unfounded litigation [might] cause a deflection of the prosecutor's energies from his public duties, and the possibility that [the prosecutor] would shade his decisions instead of exercising the independence of judgment required by his public trust." 424 U.S. 409, 430–31 (1976). As for the reason for applying absolute immunity rather than qualified immunity under the appropriate facts, the *Imbler* Court noted:

> To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system.

*Id.* at 427–28.

---

[4] But even when a prosecutor is absolutely immune from civil liability, that does not mean their actions must go unchecked. They can still be subject to sanctions, removal, criminal charges, and other accountability measures. *Id.*

But absolute immunity is narrow in that it extends only to acts which are "'intimately associated with the judicial phase of the criminal process,' such as when the prosecutor 'initiat[es] a prosecution and . . . present[s] the State's case.'" *Smith*, 147 F.4th at 619 (quoting *Imbler*, 424 U.S. at 430–31). "The analytical key to prosecutorial immunity . . . is *advocacy*— whether the actions in question are those of an advocate." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (en banc) (citation omitted). Absolute immunity does not apply when a prosecutor performs only "administrative" or "investigative" functions.[5]  *Id.* (citation omitted).

So the distinction between advocacy and investigation is important. Courts use a "functional approach" to differentiate between the two. *See Cooperrider v. Woods*, 127 F.4th 1019, 1028 (6th Cir. 2025). This approach requires courts to "'identify precisely the wrongful acts' that a prosecutor has taken and 'classify those acts according to their function.'" *See Jackson*, 64 F.4th at 743 (quoting *Adams v. Hanson*, 656 F.3d 397, 403 (6th Cir. 2011)). For example, absolute immunity protects prosecutors from suit for acts related to "initiating and pursuing criminal prosecutions." *Jackson*, 64 F.4th at 743. And "[a]bsolute immunity applies to 'acts ... includ[ing] the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.'" *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 273(1993)). (citing *Imbler*, 424 U.S. at 431).

Plaintiff alleges that Smith violated his rights many ways. He claims that Smith failed to verify or correct inaccurate information before approving the indictment;[6] ignored evidence that

---

[5] For example, a prosecutor's "investigative efforts to obtain an arrest warrant, authorize wiretaps, or advise the police" are actions that "fall[] outside the cloak of absolute immunity." *Price*, 72 F.4th at 719–20.

[6] Plaintiff's claim here is misplaced. The indictment correctly lists Anthony Terrell Roberson as the defendant. (ECF No. 57-1.)

he was not the suspect; negligently maintained charges against him despite Anthony Terrell Roberson already being in SCSO custody; and failed to adequately train or supervise employees. (ECF No. 68 at PageID 375–76; *see* ECF No. 40 at PageID 244–45.)  And he frames each of Smith's acts as ministerial, supervisory, or investigative tasks that are disassociated with his advocacy role.  (ECF No. 68 at PageID 376.)  Plaintiff claims that Smith violated his rights at three stages: (1) preparing the indictment sheet; (2) choosing to maintain the charges post-indictment; and (3) failing to adequately train or supervise employees.  Because Smith does not argue that he is entitled to absolute immunity for the supervisory liability claim (*see* ECF No. 57), the Court considers only whether he is entitled to absolute immunity for the first two claims.

### A. Preparing Indictment

Start with the first.  Smith argues that "seeking an indictment [is] intimately associated with the initiation of the judicial process."  (ECF No. 77 at PageID 441.)  He is correct. "Prosecutors receive absolute immunity from suit for conduct in initiating and pursuing criminal prosecutions." *Jackson*, 64 F.4th at 743.  A prosecutor's advocacy in this context typically begins at the evaluation of evidence the police have gathered and deciding what charges to bring in an indictment. *Spurlock*, 330 F.3d at 799 .  So absolute immunity "shield[s] the prosecutor seeking an indictment because any lesser immunity could impair the performance of a central actor in the judicial process." *Malley v. Briggs*, 475 U.S. 335, 343 (1986).  It follows that when Smith decided what charges to bring and submitted the indictment paperwork, he was acting in his role as an advocate.  Because of that, Smith is entitled to absolute immunity from this claim.

### B. Choosing to Maintain the Charges

Turn now to the claim that Smith negligently chose to maintain the charges against Plaintiff despite evidence that the correct defendant was already in custody.  Smith is also correct

9

that he is immune from this claim. (*See* ECF No. 77 at PageID 441–42.) This is because "the initiation and prosecution of a lawsuit on behalf of the government fall squarely within prosecutorial functions." *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 514 (6th Cir. 2019) (citing *Imbler*, 424 U.S. at 431). Plaintiff is claiming that Smith failed to drop the charges after the indictment against Plaintiff.

That Smith may have negligently chosen to maintain the charges is irrelevant. Plaintiff argues that Smith "knew or had reason to know that Mr. Robertson may not have been the right defendant as early as March 2024." (ECF No. 68 at PageID 377.) And that Smith's "massive delay caused Mr. Robertson to be incarcerated for months." (*Id.*) But the fact that a prosecutor's actions may have harmed a defendant does not destroy prosecutorial immunity. *Price*, 72 F.4th at 719; *Buckely v. Fitzsimmons*, 509 U.S. 259, 271 (1993) ("As we have noted, the *Imbler* approach focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful."). And prosecutorial immunity is not defeated even when the challenged action or inaction was improper "so long as the general nature of the action in question is part of the normal duties of a prosecutor." *Cady v. Arenac Cnty.*, 574 F.3d 334, 340 (6th Cir. 2009) (quoting *Imbler*, 424 U.S. at 413, 430).

*Drake v Howland* is a case with similar facts and the Sixth Circuit found absolute immunity protected the prosecutor's actions. There, a plaintiff sued a prosecutor for his "decision to file and then maintain criminal charges . . . in the face of allegedly conflicting evidence." 463 F. App'x 523, 526–27 (6th Cir. 2012). But the *Drake* court found that the prosecutor was entitled to absolute immunity. *Id.* That was because "a prosecutor's decision to bring and maintain charges is squarely within the doctrine." *Id.* at 527.

As in *Drake*, Smith's decision here to prosecute the case against Plaintiff fits within his normal duties as a prosecutor. *See also Cooperrider*, 127 F.4th at 1028 (explaining absolute immunity applies to "administrative or investigative acts necessary for a prosecutor to initiate or maintain the criminal prosecution" (citation omitted)); *cf. Smith*, 147 F.4th at 619 (explaining that advocacy can include includes "various preparatory activities outside the courtroom," including "obtaining, reviewing, and evaluating evidence"). And so he is entitled to absolute prosecutorial immunity for this claim.

## II.    Qualified Immunity

That leaves Plaintiff's claim that Smith failed to adequately train or supervise the employees under his supervision. The Court analyzes this claim through a qualified immunity lens.

Qualified immunity shields government officials who performed discretionary functions from civil liability. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800 818 (1982). And although raised by a defendant, the plaintiff suing under § 1983 "bears the burden of showing that a defendant is not entitled to qualified immunity." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016) (citation omitted). But that burden is not high at this early stage of litigation. The Sixth Circuit routinely notes that granting qualified immunity is "generally inappropriate" at the motion-to-dismiss stage. *See, e.g.*, *Chrestman ex rel. Wooden v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 156 F.4th 694, 701 (6th Cir. 2025). With that said, "most statements of this proposition are careful to explain that its application rests on qualified immunity's clearly established prong." *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021) (citations omitted). That is because "[d]ismissing for qualified immunity on this ground is sometimes difficult

11

because the clearly established inquiry may turn on case-specific details that must be fleshed out in discovery." *Id.* at 765 (citations omitted).

To overcome a qualified immunity defense, a plaintiff must show the official (1) violated their constitutional right and (2) that right was clearly established at the time of the offense. *See, e.g., Crawford*, 15 F.4th at 760. As for the training and supervision, Plaintiff has not asserted that Smith committed a constitutional violation here.

A government official may be liable under § 1983 for failure to train and supervise, otherwise known as supervisory liability. *Cf. Venema v. West*, 133 F.4th 625, 633 (6th Cir. 2025). But liability based on respondeat superior is not enough. This type of claim—like all individual capacity claims—requires a plausible allegation of personal liability. *Id.* Which means that an official may not be held liable for the unconstitutional actions of subordinate employees. *Id.* (citing *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016)). Instead, a plaintiff must plead that the official violated the Constitution through his *own* actions. *Id.* To state this type of claim, "a plaintiff must plausibly allege that a supervisory defendant 'authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . of his subordinates through the execution of his job functions.'" *Crawford*, 15 F.4th at 761 (quoting *Peatross*, 818 F.3d at 242).

Plaintiff fails to overcome these hurdles as they relate to Smith. The Complaint claims that Smith was the prosecutor assigned to Plaintiff's case. (ECF No. 40 at PageID 241.) But other than a conclusory statement that he failed to supervise or train "his" employees, Plaintiff does not allege that Smith has a supervisory position as Assistant District Attorney. (*See id.* at PageID 241, 259.) Compare that to *Peatross*, when the plaintiff plausibly alleged that the

12

director of the MPD failed to supervise and train *his own* officers.[7]  818 F.3d at 243.  Or *Venema*, when the plaintiff plausibly alleged that a correctional facility warden knowingly assented in the unconstitutional conduct of his correctional officers.  133 F.4th at 633.  The Complaint here does not allege that Smith had subordinates or supervised others.

Yet Plaintiff argues that his allegations surpass mere negligence and plausibly allege deliberate indifference.  This argument misses the point.  For his supervisory liability, Plaintiff must show "at a minimum" that Smith failed to "supervise, control, or train an offending *subordinate*." *Id.* (emphasis added) (citations omitted); *see Crawford*, 15 F.4th at 761 ("So, on top of the deliberate indifference standard, Dawn's complaint must also meet the requirements of supervisory liability in § 1983 cases.").  And he has failed to plead as much.[8]  Plaintiff has not carried his burden of plausibly alleging that Smith violated his constitutional rights through supervisory liability.  And for that reason, Smith is entitled to qualified immunity for this claim.

## CONCLUSION

This is a very sad case.  The Court recognizes that Plaintiff spent time in custody for crimes he did not commit.  That is an unfortunate failure of our judicial system.  But our system of justice is not perfect.  People make mistakes and prosecutors who make mistakes have the protection of immunity.  Smith is entitled to absolute prosecutorial immunity and qualified

---

[7] Other than Plaintiff alleges Smith failed to adequately train his employees here (*see* ECF No. 40 at PageID 241, 259), the Complaint largely asserts his failure-to-train claim against Shelby County. (*See id.* at PageID 250 (TGTLA claim), 253 (*Monell* deliberate indifference claim).

[8] Even if the Court were to consider the emails attached to Plaintiff's response, they would not impose supervisory liability on Smith.  In a July 5, 2024, memo to the Shelby County Criminal Court, Smith states that he was no longer assigned to the Special Victim's Unit after being informed about Plaintiff's misidentification.  (ECF No. 68-1 at PageID 389.)  And that he passed that information along, presumably to his replacement.  (*Id.*; ECF No. 77 at PageID 442.)  This does not show that he "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" of his subordinates.  *Peatross*, 818 F.3d at 242 (citation omitted).

immunity, meaning that Plaintiff cannot hold him liable under § 1983.  So for the reasons above, the Court **GRANTS** Smith's Motion to Dismiss and **DISMISSES** Plaintiff's claims against him.

    **SO ORDERED**, this 4th day of March, 2026.

                                            s/Thomas L. Parker
                                            THOMAS L. PARKER
                                           UNITED STATES DISTRICT JUDGE